# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

IOFINA, INC., )
IOFINA RESOURCES, INC. and )
IOFINA CHEMICAL, INC., )
 )
        Plaintiffs, )
 )
vs. ) Case No. CIV-14-1328-M
 )
IGOR KHALEV, and )
KIVA HOLDING, INC., )
 )
        Defendants. )

## ORDER

This case is scheduled for trial on the Court's October 2016 trial docket.

Before the Court is defendants' Motion for Partial Summary Judgment, filed September 2, 2016. On September 22, 2016, plaintiffs filed their response, and on September 29, 2016, defendants filed their reply. Based upon the parties' submissions, the Court makes its determination.

I.    Introduction[1]

Plaintiffs Iofina, Inc., Iofina Resources, Inc., and Iofina Chemical, Inc. (collectively "Iofina") are involved in the iodine extraction and chemical manufacturing business. Iofina hired defendant Dr. Igor Khalev ("Dr. Khalev") on or around September 9, 2011 to be its Vice President of

---

[1] In their reply, defendants assert that plaintiffs' substantial non-compliance with Local Civil Rule 56.1 should result in defendants' undisputed facts being deemed admitted. Having reviewed plaintiffs' response, the Court finds that plaintiffs have sufficiently complied with Local Civil Rule 56.1. Plaintiffs clearly set forth that they only dispute defendants' undisputed material facts nos. 1, 10, 11, 20, 21, 22, 23, and 24. Further, plaintiffs cited to particular evidentiary material in support of their statements. Accordingly, the Court will not deem all of defendants' undisputed facts admitted; the only undisputed facts that are admitted are those to which plaintiffs did not dispute.

Engineering.[2] Dr. Khalev's job duties included communicating and working with equipment vendors and overseeing the design and construction of iodine extraction plants.

When Dr. Khalev began work at Iofina, Iofina extracted iodine using the WET (wellhead extraction technology) method.[3] Approximately one week after beginning his employment at Iofina, Dr. Khalev met with Forest Dorn and Scott Formolo, and a decision was made to look into transitioning from the WET method to the air blowout/air desorption method. To quickly accomplish this transition, Dr. Khalev traveled to the Ukraine to visit a company called Iodobrom[4] to analyze water samples from possible sites, size and cost titanium equipment, design plant layouts for possible sites, and preliminarily design an air desorption plant. As a result of Dr. Khalev and Iodobrom's work, three air-blowing/air desorption plants ("Iosorb plants") were built.

Dr. Khalev's employment was terminated on or about August 12, 2013. After his termination from Iofina, Dr. Khalev organized his own company, defendant KIVA Holding, Inc., to construct and operate an iodine-extraction plant. On December 1, 2014, Iofina filed the instant action against defendants. One of the claims Iofina asserts against defendants is a misappropriation of trade secrets claim. Defendants now move this Court to enter partial summary judgment as to certain of the trade secrets at issue in Iofina's misappropriation of trade secrets claim.

---

[2] At the time Iofina hired Dr. Khalev, he had over twenty years of experience in the iodine field.

[3] The WET method was an extraction method based on the ion/anion exchange method.

[4] Dr. Khalev and Iodobrom had worked together before his employment with Iofina in the construction of an iodine extraction plant using the air blowout/air desorption method.

2

II.	Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.	Discussion

"To prove misappropriation of a trade secret, the [plaintiff] must show (i) the existence of a trade secret, (ii) misappropriation of the secret by defendants, and (iii) use of the secret to the [plaintiff's] detriment." *MTG Guarnieri Mfg. v. Clouature*, 239 P.3d 202, 209 (Okla. Civ. App. 2010) (citing *Micro Consulting, Inc. v. Zubeldia*, 813 F. Supp. 1514, 1534 (W.D. Okla. 1990)). Further, the Oklahoma Uniform Trade Secrets Act ("OUTSA") defines "trade secret" as follows:

> information, including a formula, pattern, compilation, program, device, method, technique or process, that:

3

> a. derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
> b. is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Okla. Stat. tit. 78, § 86(4). Additionally,

> Oklahoma has adopted six factors from the Restatement of Torts to help determine whether information is a trade secret: (1) the extent to which the information is known outside of the business; (2) the extent to which the information is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and to competitors; (5) the amount of effort or money expended by the business in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1245 (10th Cir. 2006) (citing *Amoco Prod. Co. v. Lindley*, 609 P.2d 733, 743 (Okla. 1980)). Further, "[a] trade secret can exist in a combination of characteristics and components each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." *Hertz v. Luzenac Grp*, 576 F.3d 1103, 1109 (10th Cir. 2009) (internal quotations and citation omitted).

Defendants contend that Iofina has failed to present sufficient evidence of at least one essential element of its prima facie case of misappropriation of trade secrets in relation to the following categories of trade secrets: (1) the alleged trade secret of conducting varying mass balance calculations to effectively extract iodine from a brine stream; (2) the alleged trade secret of monitoring, controlling and decontaminating naturally occurring radioactive material ("NORM"); and (3) the alleged trade secret of packing design and fabrication originally sourced through

4

Iodobrom and fabrication drawings of various components of its titanium iodine extraction equipment adapted and provided by Iodobrom.[5]

### A. Conducting varying mass balance calculations to effectively extract iodine from a brine stream

Iofina has described one of its trade secrets as "Plaintiffs' research and development of extraction from oilfield waste including: [c]onducting varying mass balance calculations to effectively extract iodine from the brine stream, including mass balance with and without acidification to reduce the precipitation of solids in the brine stream." Plaintiffs' Supplemental Responses to Defendants' Igor Khalev and Kiva Holding, Inc.'s First Interrogatories at 4. Defendants assert that as a matter of law, Iofina has failed to present sufficient evidence that it owns a protection in this alleged trade secret. Specifically, defendants contend that Iofina is trying to claim trade secret protection over a calculation that, at best, was done by particularly skilled individuals hired to do work for Iofina and these individuals knew how to conduct these equations because these mass balance equations are generally known by those who construct air-blowing/air desorption equipment for iodine extraction. Additionally, defendants contend that Iofina submitted documents, that it has identified as showing this alleged trade secret, to the Texas Commission on Environmental Quality without any confidentiality designation and that this submission without any expectation of confidentiality defeats trade secret protection.[6]

---

[5]In its response, Iofina states that it is no longer claiming the packing material to be a trade secret. Thus, any argument regarding the alleged trade secret of packing design is now moot.

[6]Defendants did not submit the documents that were sent to the Texas Commission on Environmental Quality as an exhibit to their motion for partial summary judgment.

Iofina asserts that defendants have completely misinterpreted/mischaracterized this trade secret claim and have analyzed this trade secret claim out of context and in an incomplete form. Iofina states that it is not contending that the calculation itself is the trade secret but that the application and use of the results of the calculations is the trade secret. Specifically, Iofina asserts that the results of the mass balance calculations provide it with information that it can analyze and apply to adapt and size the equipment and the operational processes used in the iodine extraction process and that since there are numerous variables present in the process of extracting iodine from produced water, the information obtained by, and the experience of, obtaining varying results from the mass balance calculations allows Iofina to adjust its process on an ongoing basis based upon the calculation results to more efficiently extract iodine from brine streams. Iofina further asserts that the process of conducting the mass balance calculations, consequently, does have independent economic value to Iofina because it did use, is currently using, and will continue to use the results of such calculations to properly size its equipment and to adapt its ongoing operations in order to efficiently extract iodine. Iofina, thus, contends that the process of conducting, analyzing, and applying the results of mass balance calculations does constitute a viable trade secret.

Additionally, Iofina contends that it did not disclose its mass balance trade secret in the documents it submitted to the Texas Commission on Environmental Quality. Iofina asserts that the mass balance calculation submitted to the Texas Commission was a single snapshot to demonstrate the air quality of the discharge at a single Iosorb plant and does not provide any information that someone could use to design and operate an iodine extraction plant. Iofina contends that this one-time disclosure of unrelated data does not disclose the true nature of Iofina's mass balance trade secret and that this trade secret, therefore, remains a viable trade secret.

Having reviewed the parties' submissions, and viewing the evidence in the light most favorable to Iofina and viewing all reasonable inferences in Iofina's favor, the Court finds that Iofina has submitted sufficient evidence to create a genuine issue as to whether this alleged trade secret is a trade secret as defined by the OUTSA. Specifically, the Court finds that this alleged trade secret encompasses more than simply the mass balance calculations themselves; the alleged trade secret encompasses the application and use of the results of the mass balance calculations to adapt and size the equipment and the operational processes used in the iodine extraction process in order to more efficiently extract iodine from brine streams. Additionally, the Court finds there are disputed issues of fact regarding what was disclosed to the Texas Commission on Environmental Quality – whether the alleged trade secret was disclosed or simply the result of a single calculation was disclosed.

Accordingly, the Court finds that defendants are not entitled to summary judgment as to this alleged trade secret.

### B. Monitoring, controlling, and decontaminating NORM

Iofina has described one of its trade secrets as "Plaintiffs' research and development of extraction from oilfield waste including: [t]he methods and procedures necessary to monitor, control and decontaminate the naturally occurring radioactive material ("NORM") collected in certain brine streams." Plaintiffs' Supplemental Responses to Defendants' Igor Khalev and Kiva Holding, Inc.'s First Interrogatories at 4. Defendants assert, in part, that Iofina has presented no evidence that defendants are using the alleged NORM trade secret to Iofina's detriment, an essential element of a misappropriation of trade secret claim. Specifically, defendants contend that the undisputed evidence shows that NORM does not occur outside Iofina's Texas plant, that Iofina does not have to account for NORM at any of its five Oklahoma plants, and that defendants' iodine extraction plant

is located in Leedey, Oklahoma. Defendants further contend that Iofina has presented no evidence that defendants have had to deal with NORM or have had to account for NORM in their iodine-extraction operation.

Having reviewed the parties' submissions, and viewing the evidence in the light most favorable to Iofina and viewing all reasonable inferences in Iofina's favor, the Court finds that Iofina has not submitted any evidence that defendants have used Iofina's alleged trade secret regarding monitoring, controlling, and decontaminating NORM. Iofina merely asserts that the unique knowledge of how to deal with NORM could have potential independent value <u>in the future</u> and is a trade secret that Iofina has a right to protect. While Iofina's alleged trade secret regarding NORM might be a trade secret subject to protection,[7] the Court finds that Iofina has failed to submit any evidence of defendants' use of this alleged trade secret, let alone use of the alleged trade secret to Iofina's detriment. The Court, therefore, finds defendants are entitled to summary judgment as to Iofina's misappropriation of trade secrets claim as to the alleged trade secret regarding monitoring, controlling, and decontaminating NORM.

C. Fabrication drawings

Iofina is claiming protection over fabrication drawings and designs related to Iofina's design and development of its IoSorb 1, IoSorb 2, and IoSorb 3 plants. Defendants assert that there is no support for Iofina's claims of trade secret protection over its fabrication drawings as a third party created them. Specifically, defendants contend that the drawings for Iofina's first three plants were initially created by Iodobrom and were delivered to Iofina by Dr. Khalev. Defendants further

---

[7]The Court is making no finding regarding whether the alleged trade secret regarding NORM is, in fact, a trade secret.

8

contend that while Iofina's contract with Iodobrom suggests Iofina has some ownership interest in the drawings for Iofina's particular plants, the contract does not give Iofina rights in Iodobrom's original designs. Defendants also contend that there is no evidence that Iodobrom assigned its preexisting know-how in iodine extraction or its prior drawings of iodine extraction plants, or its rights in the digital files it used as templates to rapidly create the fabrication drawings it used to make Iofina's first air desorption towers for IoSorb 1 in Texas. Iofina asserts that since it hired and paid Iodobrom to prepare fabrication drawings based on information provided by Iofina's employee, Dr. Khalev, Iofina owns all trade secrets produced by Iodobrom related to the drawings. Iofina further asserts that it had an exclusivity agreement and a confidentiality agreement with Iodobrom to protect these documents from use and disclosure.

Having reviewed the parties' submissions, and viewing the evidence in the light most favorable to Iofina and viewing all reasonable inferences in Iofina's favor, the Court finds that Iofina has submitted sufficient evidence to create a genuine issue of material fact as to the extent of the involvement of Dr. Khalev, Iofina's employee at the time, in the creation of the fabrication drawings. The Court further finds that there is a disputed issue of material fact as to whether the fabrication drawings were Iodobrom's standard drawings or whether they were customized drawings for Iofina. Accordingly, the Court finds that defendants are not entitled to summary judgment as to this alleged trade secret.

IV. Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART defendants' Motion for Partial Summary Judgment [docket no. 116] as follows:

9

(A) The Court GRANTS the motion for partial summary judgment as to Iofina's misappropriation of trade secrets claim as to the alleged trade secret regarding monitoring, controlling, and decontaminating NORM; and

(B) The Court DENIES the motion for partial summary judgment as to Iofina's alleged trade secret relating to conducting varying mass balance calculations to effectively extract iodine from the brine stream and as to Iofina's alleged trade secret relating to fabrication drawings.

**IT IS SO ORDERED this 4th day of October, 2016.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE