# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

IOFINA, INC., )
IOFINA RESOURCES, INC. and )
IOFINA CHEMICAL, INC., )
                     )
             Plaintiffs, )
                     )
vs. )    Case No. CIV-14-1328-M
                     )
IGOR KHALEV, and )
KIVA HOLDING, INC., )
                     )
             Defendants. )

## **ORDER**

This case is scheduled for trial on the Court's November 2016 trial docket.

Before the Court is plaintiffs' Motion for Partial Summary Judgment against Defendants Igor Khalev and KIVA Holding, Inc., filed September 1, 2016. On September 22, 2016, defendants filed their response, and on September 29, 2016, plaintiffs filed their reply. Based upon the parties' submissions, the Court makes its determination.

I.     Introduction

Plaintiffs Iofina, Inc., Iofina Resources, Inc., and Iofina Chemical, Inc. (collectively "Iofina") are involved in the iodine extraction and chemical manufacturing business. Iofina hired defendant Dr. Igor Khalev ("Dr. Khalev") on or around September 9, 2011 to be its Vice President of Engineering.[1] Dr. Khalev's job duties included communicating and working with equipment vendors and overseeing the design, construction, and operation of iodine extraction plants.

---

[1] At the time Iofina hired Dr. Khalev, he had over twenty years of experience in the iodine field.

On September 9, 2011, Dr. Khalev entered into a Covenant Not to Compete Agreement ("Non-Compete Agreement") with Iofina Natural Gas, Inc.[2] On October 4, 2011, Dr. Khalev also executed an Employee Non-Disclosure, Proprietary Information and Patent and Invention Assignment Agreement ("Non-Disclosure Agreement") with Iofina Natural Gas, Inc.

When Dr. Khalev began work at Iofina, Iofina extracted iodine using the WET (wellhead extraction technology) method.[3] Approximately one week after beginning his employment at Iofina, Dr. Khalev met with Forest Dorn and Scott Formolo, and a decision was made to look into transitioning from the WET method to the air blowout/air desorption method. To quickly accomplish this transition, Dr. Khalev traveled to the Ukraine to visit a company called Iodobrom[4] to analyze water samples from possible sites, size and cost titanium equipment, design plant layouts for possible sites, and preliminarily design an air desorption plant. Iofina Natural Gas, Inc. entered into a contract with Iodobrom to design and manufacture process equipment which was incorporated into three air-blowing/air desorption plants ("Iosorb plants").[5] Iofina also entered into an Exclusive Services and Proprietary Information Agreement with Iodobrom on December 1, 2011, which provided that for a period of ten (10) years after completion of Iodobrom's work for Iofina, Iodobrom would not assist any company that competes with Iofina in North America and would not disclose any proprietary information of Iofina to any person or entity without Iofina's consent.

---

[2]Plaintiff Iofina Resources, Inc. is the successor of Iofina Natural Gas, Inc.

[3]The WET method was an extraction method based on the ion/anion exchange method.

[4]Dr. Khalev and Iodobrom had worked together before his employment with Iofina in the construction of an iodine extraction plant using the air blowout/air desorption method.

[5]This contract contained a confidentiality provision.

2

While employed with Iofina, Dr. Khalev also introduced Iofina to a Russian company called Mechtechnology, which manufactured process equipment for Iofina's Iosorb plants. When Forest Dorn requested that Dr. Khalev obtain a non-disclosure or exclusivity agreement with Mechtechnology, Dr. Khalev responded that Iofina did not need an exclusivity agreement with Mechtechnology because it was a small machine shop that did not have the science or know how to design and produce the process equipment utilized by Iofina in its Iosorb plants.

Dr. Khalev's employment was terminated on or about August 12, 2013. During the meeting wherein Dr. Khalev was terminated, he was advised that he was still subject to the terms of the Non-Compete Agreement and the Non-Disclosure Agreement. Dr. Khalev was also asked if he had any Iofina property, and Dr. Khalev stated that he had diagrams, layouts, and equipment drawings of the Iofina plants that were created during his employment. Dr. Khalev did not return these documents until July 7, 2015.

After his termination from Iofina, on or about November 20, 2013, Dr. Khalev organized his own company, defendant KIVA Holding, Inc. ("KIVA"), to construct and operate an iodine-extraction plant using produced water in the Texas/Oklahoma region. Dr. Khalev is currently the president of KIVA and has been the president since approximately two months after KIVA came into existence. After forming KIVA, and within one year after the termination of his employment with Iofina, Dr. Khalev commenced the process of building an iodine extraction plant in Leedey, Oklahoma, less than 100 miles away from Iofina's Iosorb plants in Alva, Oklahoma. To aid in the construction of process equipment for KIVA's Leedey, Oklahoma plant, Dr. Khalev engaged

3

Mechtechnology.⁶ KIVA's Leedey iodine plant became operational in June of 2015, and KIVA sold its first batch of iodine at the beginning of June 2016.

On December 1, 2014, Iofina filed the instant action against defendants. In this action, Iofina asserts a claim for breach of contract against Dr. Khalev and claims for tortious interference with business relationship and unfair competition against Dr. Khalev and KIVA.⁷ Iofina now moves this Court to enter partial summary judgment as to its claims for breach of contract, tortious interference with business relationship, and unfair competition.

II.  Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require

---

⁶Alexander Kulic, a mechanical engineer at Mechtechnology, previously worked on design drawings for Iofina's Iosorb plants when he previously was employed by Iodobrom.

⁷Iofina is also asserting other claims against defendants. Iofina, however, is not seeking summary judgment as to these other claims.

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III. Discussion

   A. Breach of Contract Claim

To prevail on a breach of contract claim, a plaintiff must establish: (1) formation of a contract; (2) breach of the contract; and (3) damages as a direct result of the breach. *See Digital Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 843 (Okla. 2001).

   1. Breach of Non-Disclosure Agreement

Iofina contends that it is entitled to summary judgment on its breach of contract claim against Dr. Khalev for his breach of the Non-Disclosure Agreement. Specifically, Iofina asserts that there is no dispute that Dr. Khalev entered into the Non-Disclosure Agreement, that he breached the Non-Disclosure Agreement, and that Iofina has suffered damages as a result. Regarding the alleged breach, Iofina asserts that Dr. Khalev utilized a significant amount of Iofina's proprietary information, as defined in the Non-Disclosure Agreement, in designing and constructing an iodine extraction plant for KIVA that bears significant and material similarities to Iofina's Iosorb plants. Iofina contends that Dr. Khalev designed and assisted in the construction of the Iosorb plants during his employment with Iofina, and that all drawings, diagrams, specifications, and other aspects of the Iosorb plants not existing in the public domain constitute protected proprietary information under the Non-Disclosure Agreement. Additionally, Iofina asserts that Dr. Khalev failed to deliver all documents pertaining to Iofina's proprietary information in his possession or relating to his work

5

performed while employed by Iofina as soon as his employment was terminated by Iofina and that this represents an independent breach of the Non-Disclosure Agreement.

Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to Dr. Khalev and viewing all reasonable inferences in Dr. Khalev's favor, the Court finds that there is a genuine issue of material fact as to whether Dr. Khalev, in fact, used or disclosed any "proprietary information," as defined in the Non-Disclosure Agreement. The Non-Disclosure Agreement defines "proprietary information" as follows:

> information that has been created, discovered or developed by, or otherwise become known to, [Iofina] (including, without limitations, information created, discovered, developed or made known by [Dr. Khalev] during the period of or arising out of [his] employment by [Iofina]), or in which property rights have been or may be assigned or otherwise conveyed to [Iofina], which information has commercial value in the business in which [Iofina] is engaged and is treated by [Iofina] as confidential . . . [and] also include[s], but shall not be limited to, systems, processes, formulae, data, functional specifications, computer programs, blueprints, know-how, improvements, discoveries, developments, designs, inventions, techniques, marketing plans, strategies, forecasts, new products, unpublished financial statements, budgets, projections, licenses, prices, costs and customer and supplier lists; provided, however, that the term "Proprietary Information" shall not include any of the foregoing which is in the public domain.

Employee Non-Disclosure, Proprietary Information and Patent and Invention Assignment Agreement at ¶ 1(C). The Court finds that it is disputed whether the information Dr. Khalev used or disclosed was part of his knowledge base on iodine-extraction processes that he brought into his employment with Iofina. Further, the Court finds that it is disputed whether the information Dr. Khalev used or disclosed was already in the public domain. Additionally, the Court finds that the evidence is unclear as to the actual work performed by Iodobrom in producing the design drawings for Iofina; it is disputed whether the software used to create the drawings is commonly used for other

6

customers and/or is simply common templates used to create the drawings or whether the work performed for Iofina was original work performed from scratch specifically for Iofina. Regarding the documents Dr. Khalev did not return until July 7, 2015, the Court finds there are disputed issues of material fact as to whether Dr. Khalev's retention of those documents damaged Iofina. Dr. Khalev has testified that he did not use those items and returned them in their original state when asked during this litigation.

Accordingly, the Court finds that Iofina is not entitled to summary judgment as to its claim for breach of the Non-Disclosure Agreement.

### 2. Breach of Non-Compete Agreement

Iofina also asserts that it is entitled to summary judgment on its breach of contract claim against Dr. Khalev for his breach of the Non-Compete Agreement. Dr. Khalev contends that Iofina has not properly raised breach of the Non-Compete Agreement as a cause of action in this case. Specifically, Dr. Khalev asserts that Iofina did not raise breach of the Non-Compete Agreement as a separate breach of contract cause of action until Iofina filed its Motion for Partial Summary Judgment.

In its Amended Complaint, Iofina alleges the following specifically in relation to its breach of contract claim:

> **II.**
> **(Breach of Contract - Defendant Khalev)**
> 25. Plaintiffs re-allege and re-incorporate by reference all of the allegations set forth in paragraphs 1 through 24 above.
> 26. The actions of Defendant, in using, disclosing and offering to disclose the proprietary and confidential information of Iofina, Inc. constitute a breach of Defendant Khalev's obligations pursuant to the Non-Disclosure Agreement he executed while he was employed by Iofina, Inc. and have caused injury and damages to Iofina, Inc. for

>which Defendant Khalev is liable to Iofina, Inc. for compensatory damages in excess of $75,000.00, plus costs and attorney fees.
>27. The Non-Disclosure Agreement provides that the breach or threatened breach of such Non-Disclosure Agreement entitled Iofina, Inc. to injunctive relief, in addition to all other remedies available to Iofina, Inc. due to such breach or threatened breach.
>28. Iofina, Inc. is entitled to judgment against Defendant Khalev in an amount in excess of $75,000.00, plus injunctive relief, costs, including reasonable attorney's fees and pre-judgment and post-judgment interest as provided by law.

Amended Complaint at ¶¶ 25-28. As shown above, no mention of the Non-Compete Agreement is made in the specific breach of contract cause of action. Iofina contends that paragraph 17 of the Factual Allegations section of the Amended Complaint, which was incorporated into the breach of contract cause of action, is sufficient to put Dr. Khalev on notice that Iofina was alleging a cause of action for violation of the Non-Compete Agreement. Paragraph 17 provides:

>17. The use of the Iofina Entities' trade secrets and proprietary and confidential information for the development, construction and operation of the iodine extraction plant in Leedey, Oklahoma constitutes an improper and illegal use of trade secrets of Iofina, Inc. and a violation of Defendant Khalev's obligations pursuant to the Non-Disclosure Agreement. In addition, Defendant Khalev's conduct is in direct violation of the Not-to-Compete Agreement in that Khalev commenced competitive activities within the one-year following the termination of his employment with Iofina, Inc.

Amended Complaint at ¶ 17.

Having carefully reviewed the Amended Complaint, the Court finds that no breach of contract cause of action for breach of the Non-Compete Agreement was asserted by Iofina in the Amended Complaint. Considering the Amended Complaint as a whole, and particularly noting the specific reference to the Non-Disclosure Agreement, which is also mentioned in paragraph 17, and not the Non-Compete Agreement in the breach of contract cause of action itself, the Court finds Dr. Khalev was not sufficiently put on notice that Iofina was asserting a breach of contract cause of

action based upon the Non-Compete Agreement. The Court further finds that Dr. Khalev would be significantly prejudiced by the inclusion of a breach of contract cause of action based upon the Non-Compete Agreement at this point in the litigation, well after discovery has closed and on the eve of trial. Accordingly, the Court finds that Iofina cannot assert a breach of the Non-Compete Agreement as a cause of action in this case. The Court, therefore, finds that Iofina is not entitled to summary judgment.

B.  Tortious Interference with Business Relationship Claims

Iofina asserts that KIVA tortiously interfered with Iofina's business relationship with Khalev. Specifically, Iofina contends that KIVA tortiously interfered with the Non-Disclosure Agreement by knowingly causing Khalev to use and disclose Iofina's proprietary information.[8] As set forth above, the Court finds that there is a genuine issue of material fact as to whether Dr. Khalev, in fact, used or disclosed any "proprietary information," as defined in the Non-Disclosure Agreement. Accordingly, the Court finds that Iofina is not entitled to summary judgment as to its tortious interference with business relationship claim in relation to tortious interference with the Non-Disclosure Agreement.

Iofina also asserts that both defendants tortiously interfered with Iofina's contractual relationship with Iodobrom. Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to defendants and viewing all reasonable inferences in defendants' favor, the Court finds that there is a genuine issue of material fact as to whether

---

[8] In its Motion for Partial Summary Judgment, Iofina also alleges that KIVA tortiously interfered with the Non-Compete Agreement. However, Iofina makes no such allegation in the Amended Complaint and only references the Non-Disclosure Agreement in relation to its tortious interference with business relationship cause of action.

defendants, in fact, interfered with Iofina's contractual relationship with Iodobrom. Defendants have submitted evidence that Dr. Khalev refused Iodobrom's unsolicited request to do business with KIVA based on the existence of the exclusivity agreement between Iofina and Iodobrom. Defendants have further submitted evidence that KIVA engaged Mechtechnology, who did not have an exclusivity agreement with Iofina, to design and fabricate air blowout towers for iodine extraction. Although Mechtechnology employed an individual that was formerly employed by Iodobrom who had worked on Iofina's design and fabrication drawings, the evidence is not clear as to which company, or if both companies, own the software program used and whether Mechtechnology, in fact, even used any prior drawings from Iodobrom.

Accordingly, the Court finds that Iofina is not entitled to summary judgment as to its tortious interference with business relationship claim in relation to tortious interference with Iofina's contractual relationship with Iodobrom.

### C. Unfair Competition Claim

Iofina asserts that defendants have engaged in unfair competition by using Iofina's confidential information. As set forth above, there is a genuine issue of material fact as to whether Dr. Khalev used Iofina's confidential information. Specifically, the Court finds it is disputed whether the information Dr. Khalev used was part of his knowledge base on iodine-extraction processes that he brought into his employment with Iofina. Further, the Court finds that it is disputed whether the information Dr. Khalev used was already in the public domain. Additionally, the Court finds that the evidence is unclear as to the actual work performed by Iodobrom in producing the design drawings for Iofina; it is disputed whether the software used to create the drawings is commonly used for other customers and/or is simply common templates used to create

the drawings or whether the work performed for Iofina was original work performed from scratch specifically for Iofina.

Accordingly, the Court finds that Iofina is not entitled to summary judgment as to its unfair competition claim.

IV. Conclusion

For the reasons set forth above, the Court DENIES plaintiffs' Motion for Partial Summary Judgment against Defendants Igor Khalev and KIVA Holding, Inc. [docket no. 113].

**IT IS SO ORDERED this 19th day of October, 2016.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE