# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IOFINA, INC., <br> IOFINA RESOURCES, INC., and <br> IOFINA CHEMICAL, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> IGOR KHALEV, and <br> KIVA HOLDING, INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. CIV-14-1328-M <br> ) <br> ) <br> ) <br> ) <br> ) |

## **ORDER**

Before the Court is defendants' Motion to Exclude Mr. Darrell Harris from Testifying as an Expert, filed September 6, 2016. On September 27, 2016, plaintiffs filed their response, and on October 4, 2016, defendants filed their reply. Based upon the parties' submissions, the Court makes its determination.

I.      Introduction

Darrell Harris was retained by plaintiffs for the purpose of reviewing and evaluating appropriate damages methodologies and calculating damages attributable to defendants' alleged wrongful acts. Specifically, in his report, Mr. Harris calculates lost profits, unjust enrichment, reasonable royalty, and breach of contract damages. While defendants do not challenge Mr. Harris' qualifications or the relevance of his opinions to the issues in this case, defendants do contend that the methodology set forth in Mr. Harris' report and his resulting conclusions are unreliable. Specifically, defendants assert that Mr. Harris' opinions are based on insufficient facts, unreliable principles and methods, and to the extent Mr. Harris' methods have any reliability, he failed to apply those methods properly to the facts of the present case.

II.     Discussion

Federal Rule of Evidence 702 governs the admissibility of expert testimony based upon scientific, technical, or other specialized knowledge. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court held that Rule 702 requires the trial court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999), the Supreme Court concluded that "*Daubert*'s general holding – setting forth the trial judge's general 'gatekeeping' obligation – applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." 526 U.S. at 141. With respect to the all-important reliability determination, the Supreme Court further concluded that "a trial court *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability. But, as the Court stated in *Daubert*, the test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Id.* (emphasis in original).

The "*Daubert* factors" that *may* be considered in assessing the reliability of proposed expert testimony are: (1) whether the theory or technique employed by the expert in formulating his expert opinion can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether, with respect to a particular technique, there is a high known or potential rate of error; (4) whether standards control operation of the technique; and (5) whether the theory or technique is generally accepted within the relevant professional community. *Id.* at 149-50 (quoting *Daubert*, 509 U.S. at 592-94). In *Kumho Tire*, the Court recognized that in some cases "the relevant reliability concerns may focus upon personal knowledge or experience," rather than scientific foundations. *Id.* at 150. In such cases, the trial court may focus on alternative factors that are better-suited to the specific type of expertise at issue. *Id.* at 150-52. "The objective of [the gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. "[T]he trial judge [has] considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.*

Further, when expert testimony is challenged under *Daubert*, the burden of proof regarding admissibility rests with the party seeking to present the testimony. *Truck Ins. Exch. v. Magnetek, Inc.*, 360 F.3d 1206, 1210 (10th Cir. 2004). "The focus [of the inquiry] . . . must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. "However, an expert's conclusions are not immune from scrutiny: A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (internal quotations and citation omitted).

3

Additionally, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

The Tenth Circuit has explained the appropriate analysis as follows:

> The plaintiff need not prove that the expert is undisputably correct or that the expert's theory is "generally accepted" in the scientific community. Instead, the plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements.

*Truck Ins. Exch.*, 360 F.3d at 1210 (quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)).

A.   Lost profits

Defendants contend that Mr. Harris' analysis of lost profits fails to consider, let alone affirmatively prove, whether plaintiffs had enough capacity to meet additional demand and the absence of other substitutes/existence of other competitors. Because Mr. Harris has not considered the above items, defendants assert that Mr. Harris' methodology in reaching his conclusion regarding lost profits is fundamentally flawed. Having carefully reviewed the parties' submissions, and particularly Mr. Harris' expert report, the Court finds Mr. Harris' methodology for calculating lost profits is reliable and is based upon sufficient facts and data. The Court would further find that Mr. Harris' methodology has been used by other experts and accepted by courts in misappropriation of trade secrets cases. Further, the Court finds that the majority of the objections defendants have to Mr. Harris' opinions go to the weight, and not the admissibility, of these opinions and that during cross-examination, defendants may thoroughly question Mr. Harris regarding all of the alleged deficiencies in his opinions.

4

Accordingly, the Court finds Mr. Harris' opinions relating to lost profits should not be excluded.

B. <u>Failure to account for possibility that not all of the alleged trade secrets have been misappropriated</u>

Defendants contend Mr. Harris' opinions improperly fail to account for the possibility that not all of the alleged trade secrets have been misappropriated. Specifically, defendants assert Mr. Harris' opinions on lost profits, unjust enrichment, and reasonable royalty damages are erroneously based on the position that his opinions would be unaffected by the number and character of trade secrets misappropriated by defendants. Defendants further contend that even if Mr. Harris' opinions could somehow be salvaged to arrive at individual values for each of plaintiffs' alleged trade secrets, Mr. Harris' lack of knowledge regarding the iodine extraction industry would provide an independent reason to reject Mr. Harris' usefulness to the jury. Finally, defendants assert that because Mr. Harris' report does not provide valuations for each individual trade secret and plaintiffs are already aware that defendants have not misappropriated all of those trade secrets, this Court should exclude Mr. Harris' testimony on damages.

Having carefully reviewed the parties' submissions, and particularly Mr. Harris' expert report and deposition testimony, the Court finds that Mr. Harris' opinions should not be excluded based upon any alleged improper failure to account for the possibility that not all of the alleged trade secrets have been misappropriated. In the case at bar, plaintiffs claim that but for defendants' misappropriation of plaintiffs' unique trade secret process for extracting iodine, which includes several stand-alone trade secrets, defendants would not have been able to build their iodine extraction plant and make any sales. Based upon plaintiffs' theory of their case, Mr. Harris testified in his deposition that the damages are the same if one trade secret is misappropriated or if all trade

secrets are misappropriated. Mr. Harris further testified that his damages model does not rely on a valuation of each of the individual components of the iodine extraction process. Thus, the Court finds that Mr. Harris' opinions are based on sufficient facts and data and are the product of reliable principles and methodology and Mr. Harris has reliably applied the principles and methodology to the facts of this case. The Court further finds that during cross-examination, defendants may thoroughly question Mr. Harris regarding any of the above-referenced alleged deficiencies in these opinions.

Accordingly, the Court finds Mr. Harris' opinions should not be excluded based upon any alleged failure to account for the possibility that not all of the alleged trade secrets have been misappropriated.

C. Reasonable royalty

Defendants contend Mr. Harris' methodology for determining a reasonable royalty is flawed and should be excluded. Specifically, defendants assert that Mr. Harris improperly relies on 2016 as the date at which the hypothetical negotiation between plaintiffs and defendants would have occurred and that the appropriate start date for a reasonable royalty determination is the time infringement occurred, not an after-the-fact assessment. Defendants also assert that Mr. Harris' mistaken reliance on SIC Code 14 affected his calculations and opinions regarding profit margins, discount rate, capitalization rate, and the present value of defendants' alleged actions. Further, defendants assert Mr. Harris' opinions improperly rely on the 25% rule. Defendants, therefore, contend that Mr. Harris' opinions on reasonable royalty are unreliable and should not be presented to a jury.

Having carefully reviewed the parties' submissions, and particularly Mr. Harris' expert report and deposition testimony, the Court finds that Mr. Harris' opinions regarding reasonable royalty are based on sufficient facts and data and are the product of reliable principles and methodology and Mr. Harris has reliably applied the principles and methodology to the facts of this case. The Court further finds that the majority of the objections defendants have to Mr. Harris' opinions regarding reasonable royalty go to the weight, and not the admissibility, of these opinions and that during cross-examination, defendants may thoroughly question Mr. Harris regarding all of the alleged deficiencies in his opinions.

Accordingly, the Court finds Mr. Harris' opinions relating to reasonable royalty should not be excluded.

### D.    Breach of contract damages

Mr. Harris opines that after reviewing the various documents needed to determine the costs associated with setting up an iodine extraction plant, he identified that the costs associated with certain PJS "SPA" "Iodobrom" pumps overlapped with certain costs associated with Magnatex pumps that purportedly serve the same function. Mr. Harris determined that the cost of the Iodobrom pumps were effectively costs that defendants avoided via their breach of the non-disclosure agreement. Defendants assert that Mr. Harris' opinion regarding these damages is not helpful to the trier or fact and that his opinions merely state what is within a juror's common knowledge and experience. Having carefully reviewed the parties' submissions, the Court finds that while the analysis regarding this aspect of Mr. Harris' opinions regarding the breach of contract damages is relatively simple, the Court finds that this opinion would still be helpful to the jury.

Accordingly, the Court finds that Mr. Harris' opinion regarding breach of contract damages should not be excluded.

III. Conclusion

For the reasons set forth above, the Court DENIES defendants' Motion to Exclude Mr. Darrell Harris from Testifying as an Expert [docket no. 122].

**IT IS SO ORDERED this 25th day of October, 2016.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE