# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

IOFINA, INC., )
IOFINA RESOURCES, INC., and )
IOFINA CHEMICAL, INC., )
　 )
    Plaintiffs, )
　 )
vs. ) Case No. CIV-14-1328-M
　 )
IGOR KHALEV, and )
KIVA HOLDING, INC., )
　 )
    Defendants. )

## ORDER

  Before the Court is plaintiffs' Motion to Exclude the Testimony and Report of Arthur Terry Brix, filed September 6, 2016. On September 27, 2016, defendants filed their response, and on October 4, 2016, plaintiffs filed their reply. Based upon the parties' submissions, the Court makes its determination.

I.  Introduction

  Plaintiffs filed the instant action against defendants alleging that they copied and misappropriated the trade secrets and proprietary confidential information of plaintiffs in order to design, construct, and operate the KIVA plant. Plaintiffs' causes of action include the alleged misappropriation of trade secrets pursuant to the Oklahoma Uniform Trade Secrets Act, breach of contract, tortious interference with prospective economic advantage, tortious interference with business relationship, and unjust enrichment. Plaintiffs engaged Henry Mowry as an expert witness to testify at trial regarding defendants' use of plaintiffs' trade secrets and proprietary and confidential information. Plaintiffs also engaged Darrell Harris to render an opinion regarding the damages suffered by plaintiffs as a result of defendants' conduct.

Defendants engaged Arthur Terry Brix as an expert witness. Mr. Brix submitted a Rebuttal Expert Report Regarding Defendants' Alleged Misappropriation of Trade Secrets, The Hank Mowry Report, and The Darrell Harris Report. Plaintiffs contend the report, opinions, and testimony of Mr. Brix should be excluded in this case because they will not assist the trier of fact in this case in reaching any relevant conclusions regarding plaintiffs' causes of action and because they have no probative value and are not reliable. Specifically, plaintiffs assert Mr. Brix's expert report and opinions are materially flawed as follows: (1) Mr. Brix did not use the definition of trade secrets contained in the Oklahoma Uniform Trade Secrets Act but rather used his own trade secrets definition; (2) Mr. Brix misapprehends the nature of plaintiffs' trade secret allegations, resulting in a failure to review and/or rely upon sufficient information to render opinions regarding plaintiffs' alleged trade secrets; (3) Mr. Brix relied upon inapplicable and/or unreliable information to support his opinions; (4) Mr. Brix misapprehends and, therefore, did not meaningfully respond to Mr. Mowry's expert opinions; and (5) Mr. Brix is not qualified to and does not meaningfully respond to the opinions of Mr. Harris.

II.     Discussion

Federal Rule of Evidence 702 governs the admissibility of expert testimony based upon scientific, technical, or other specialized knowledge. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>     (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>     (b) the testimony is based on sufficient facts or data;
>     (c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In undertaking its gatekeeping function, a court must first determine under Rule 702 whether the witness is qualified and whether the opinions expressed fall within his area of expertise. *See Graves v. Mazda Motor Corp.*, 675 F. Supp. 2d 1082, 1092-93 (W.D. Okla. 2009). "'[T]he issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.'" *Id.* (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)).

If the court determines the witness is qualified, it must then determine whether the expert's opinions are reliable. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court held that Rule 702 requires the trial court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999), the Supreme Court concluded that "*Daubert*'s general holding – setting forth the trial judge's general 'gatekeeping' obligation – applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." 526 U.S. at 141. With respect to the all-important reliability determination, the Supreme Court further concluded that "a trial court *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability. But, as the Court stated in *Daubert*, the test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Id.* (emphasis in original).

The "*Daubert* factors" that *may* be considered in assessing the reliability of proposed expert testimony are: (1) whether the theory or technique employed by the expert in formulating his expert opinion can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether, with respect to a particular technique, there is a high known or potential rate of error; (4) whether standards control operation of the technique; and (5) whether the theory or technique is generally accepted within the relevant professional community. *Id.* at 149-50 (quoting *Daubert*, 509 U.S. at 592-94). In *Kumho Tire*, the Court recognized that in some cases "the relevant reliability concerns may focus upon personal knowledge or experience," rather than scientific foundations. *Id.* at 150. In such cases, the trial court may focus on alternative factors that are better-suited to the specific type of expertise at issue. *Id.* at 150-52. "The objective of [the gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. "[T]he trial judge [has] considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.*

Further, when expert testimony is challenged under *Daubert*, the burden of proof regarding admissibility rests with the party seeking to present the testimony. *Truck Ins. Exch. v. Magnetek, Inc.*, 360 F.3d 1206, 1210 (10th Cir. 2004). "The focus [of the inquiry] . . . must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. "However, an expert's conclusions are not immune from scrutiny: A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (internal quotations and citation omitted).

Additionally, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

The Tenth Circuit has explained the appropriate analysis as follows:

> The plaintiff need not prove that the expert is undisputably correct or that the expert's theory is "generally accepted" in the scientific community. Instead, the plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements.

*Truck Ins. Exch.*, 360 F.3d at 1210 (quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)).

A. <u>Opinions whether plaintiffs possessed any trade secrets</u>

Plaintiffs assert that all of Mr. Brix's opinions regarding whether plaintiffs possessed any trade secrets are unreliable, irrelevant, and should be excluded because Mr. Brix did not apply the applicable definition of trade secret. In their response, defendants state that Mr. Brix will not be testifying as to whether something ultimately meets the legal definition of trade secret. Defendants further state that Mr. Brix's opinions with respect to plaintiffs' alleged trade secrets will be limited to whether, based on his extensive experience in the iodine extraction industry and his review of applicable literature, plaintiffs' documents, and plaintiffs' corporate representatives' deposition testimony, certain things are generally known or readily ascertainable by others in the trade.

Having carefully reviewed the parties' submissions, and particularly Mr. Brix's expert report and deposition testimony, and in light of defendants' statement, the Court finds that this portion of plaintiffs' motion is moot. Specifically, the Court finds that Mr. Brix will not be testifying regarding the ultimate issue of whether any of plaintiffs' alleged trade secrets are, in fact, trade secrets. The

Court would note that in his expert report, Mr. Brix limits his opinions to whether certain matters are generally known or readily ascertainable by others engaged in the business of iodine extraction. It was only when specific questions regarding whether certain items were trade secrets were asked in his deposition that Mr. Brix opined as to the ultimate issue.[1]

B. Trade secret allegations

Plaintiffs assert that Mr. Brix misapprehends plaintiffs' trade secret allegations and has not applied a reliable methodology to assess those trade secrets. Plaintiffs contend they are not alleging that knowing the need to conduct mass balance calculations, acidifying the water, and neutralizing the water, for example, constitute trade secrets but rather they are alleging that the process of compiling processes and adapting them for effective use in the produced water environment encountered in the oil fields constitutes a trade secret. Plaintiffs assert that Mr. Brix made no attempt to determine, and does not know, the research and development process and other trial and error processes utilized by plaintiffs to figure out how to apply the blow out process to brine water with significant amounts of hydrocarbons. Plaintiffs, therefore, contend that the bulk of Mr. Brix's opinions are flawed and unreliable because Mr. Brix did not utilize a proper methodology to reach such opinions.

Defendants assert that even if Mr. Brix misapprehended the scope of plaintiffs' alleged trade secrets, his testimony as to what knowledge was in the public domain would still be useful to the trier of fact's determination as to the scope of plaintiffs' alleged trade secrets. Defendants further assert that Mr. Brix holistically reviewed all of the documents provided to him by counsel to get an

---

[1] Due to the inappropriateness of such questions being asked of Mr. Brix at trial, the Court does not expect such questions to be asked by counsel for either party.

overview of plaintiffs' entire process and the detailed unit operations and specifically considered the documents listed in plaintiffs' supplemental responses to defendants' request for production 1(1)(a)-1(4)(f) and read and took detailed notes on the 30(b)(6) depositions of plaintiffs' corporate representatives, Forest Dorn and Scott Formolo. Additionally, Mr. Brix's review of the evidence included the photographs that are included in the Mowry Report of the various elements and processes of plaintiffs' and defendants' plants.

Having carefully reviewed the parties' submissions, the Court finds that Mr. Brix's opinions are based on sufficient facts and data and are the product of reliable principles and methodology and Mr. Brix has reliably applied the principles and methodology to the facts of this case. Specifically, the Court finds that Mr. Brix considered numerous documents, photographs, and deposition testimony to reach an understanding of plaintiffs' process and to formulate his opinions in this case. The Court further finds that during cross-examination, defendants may thoroughly question Mr. Brix regarding any of the above-referenced alleged deficiencies in his opinions.

Accordingly, the Court finds Mr. Brix's opinions should not be excluded on this basis.

C.    Reliance upon unreliable and/or inapplicable sources

Plaintiffs assert that the expertise that Mr. Brix possesses and relies upon in order to formulate and render his opinions is unreliable and/or inapplicable to the specific issues involved in determining plaintiffs' trade secret claims. Further, plaintiffs assert that some of Mr. Brix's opinions rely strictly upon conversations with defendant Khalev. Having carefully reviewed the parties' submissions, the Court finds Mr. Brix's opinions are based on reliable facts, data, and sources and are the product of reliable principles and methodology and Mr. Brix has reliably applied the principles and methodology to the facts of this case. The Court further finds that the majority

7

of the objections defendants have to Mr. Brix's opinions go to the weight, and not the admissibility, of these opinions and that during cross-examination, defendants may thoroughly question Mr. Brix regarding all of the alleged deficiencies in his opinions.

Accordingly, the Court finds Mr. Brix's opinions should not be excluded on this basis.

### D. Opinions relating to the Mowry Report

Plaintiffs assert that Mr. Brix misstates and misapprehends the conclusions in the Mowry Report and, therefore, his response is unreliable and will lead to confusion of the jury. In his report, Mr. Mowry opined regarding whether defendants utilized plaintiffs' processes in the development, design, construction and/or operation of the KIVA plant but did not opine as to whether the components of plaintiffs' processes and KIVA's processes constitute trade secrets. In his rebuttal of Mr. Mowry's report, however, Mr. Brix focuses on whether the processes were generally known and does not opine as to whether defendants utilized plaintiffs' processes in the development, design, construction and/or operation of the KIVA plant. In fact, when asked in his deposition whether he was rendering an opinion as to whether or not Dr. Khalev used information that he learned with regard to these alleged trade secrets in order to implement those in the KIVA plant, Mr. Brix responded that he could not comment on that. *See* Deposition of Arthur Terry Brix, p. 368, ln. 21 - p. 369, ln. 2.

Because Mr. Brix does not address Mr. Mowry's opinions but addresses matters outside of Mr. Mowry's opinions, the Court finds that his opinions in response to the Mowry Report should be excluded.

### E. Opinions relating to Mr. Harris' damages model

Based upon his experience serving on the Licensing Executives Society in the 1980s and 1990s and continued involvement in licensing activities since that time, Mr. Brix opined that Mr. Harris did not consider four principal factors in determining a royalty rate and that Mr. Harris' failure to calculate a valuation for each trade secret is non-sensical. Plaintiffs assert that Mr. Brix is not qualified to opine on Mr. Harris' damages model. Defendants contend that Mr. Brix is qualified to rebut Mr. Harris' damages model.

Having carefully reviewed the parties' submissions, the Court finds that Mr. Brix is not qualified to render any opinions relating to Mr. Harris' damages model. Mr. Brix received degrees in chemical engineering and a Masters in Business Administration. While Mr. Brix did take courses in finance and accounting, including one for intellectual property valuation, in pursuit of his masters, Mr. Brix took those courses sometime between 1967 and 1976. Additionally, Mr. Brix admits that he is not an accountant, lacks any certifications or degrees in accounting or business valuation, and has never analyzed a damages calculation before. Further, Mr. Brix's licensing experience consists of 20-25 licensing transactions that occurred 3 to 4 decades ago, and none of the transactions involved trade secrets or iodine technology. The Court finds that based upon the above, Mr. Brix does not have the knowledge, skill, experience, training, or education necessary to opine regarding Mr. Harris' damages model.

Accordingly, the Court finds that Mr. Brix's opinions in response to the Harris Report should be excluded.

III. Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART plaintiffs' Motion to Exclude the Testimony and Report of Arthur Terry Brix [docket no. 121] as follows:

(A) The Court GRANTS the motion as to Mr. Brix's opinions in response to the Mowry Report and in response to the Harris Report; and

(B) The Court DENIES the remainder of the motion to exclude.

**IT IS SO ORDERED this 25th day of October, 2016.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE