# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IOFINA, INC., ) | |
| IOFINA RESOURCES, INC. and ) | |
| IOFINA CHEMICAL, INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. CIV-14-1328-M |
| ) | |
| IGOR KHALEV, and ) | |
| KIVA HOLDING, INC., ) | |
| ) | |
| Defendants. ) | |

## **ORDER**

Before the Court is plaintiffs' Motion for Permanent Injunction, filed December 8, 2016. On December 16, 2016, defendants filed their response, and on December 20, 2016, plaintiffs filed their reply. On December 22, 2016, the Court held a hearing on this matter. Based upon the parties' submissions, as well as the evidence presented at the jury trial of this matter and the arguments made at the December 22, 2016 hearing, the Court makes its determination.

I.  Introduction

This case was tried to a jury from November 4, 2016 through November 28, 2016. After deliberation, the jury returned a verdict in favor of plaintiffs and against defendant Igor Khalev ("Dr. Khalev") on plaintiffs' claims for misappropriation of trade secrets, breach of the Non-Disclosure Agreement, unfair competition, and conversion; a verdict in favor of Dr. Khalev and against plaintiffs on plaintiffs' claims for tortious interference with contract and breach of fiduciary duty; a verdict in favor of defendant KIVA Holding, Inc. ("KIVA") on plaintiffs' claims for misappropriation of trade secrets, unfair competition, conversion, and tortious interference with

contract; and a verdict in favor of Dr. Khalev and against plaintiffs on Dr. Khalev's counterclaim for breach of contract.

Based upon the Non-Disclosure Agreement between plaintiff Iofina Resources, Inc. and Dr. Khalev, the Oklahoma Uniform Trade Secrets Act ("OUTSA"), and the jury verdict in this case, plaintiffs now move this Court to grant a permanent injunction against Dr. Khalev and KIVA. Specifically, plaintiffs request that the Court enjoin Dr. Khalev and KIVA as follows:

a. Khalev and KIVA, and their respective employees, agents, contractors, partners and investors should be enjoined from disclosing any portion of Plaintiffs' trade secret process in any manner, whether in written, audible or visual form. For the sake of clarity, and without limiting the scope of the requested injunction, Khalev should be enjoined from providing any services, consulting or otherwise, in which a part of those services require providing information about extracting iodine from produced water at salt water disposal sites.

b. Khalev and KIVA, and their respective employees, agents, contractors, partners and investors should be enjoined from using any portion of Plaintiffs' trade secret process. For the sake of clarity, and without limiting the scope of the requested injunction, Khalev and KIVA should be enjoined from constructing any iodine extraction plants that extract iodine from produced water at salt water disposal sites using air desorption.

c. Khalev and KIVA, and their respective employees, agents, contractors, partners and investors should be enjoined from producing any iodine at the iodine extraction plant in Leedey, Oklahoma, as its operation is so intertwined with Plaintiffs' trade secret process as to make such operation a misappropriation of the same.

d. Khalev, and his agents or anyone acting in concert with him, should be enjoined from using or disclosing Plaintiffs' Proprietary Information, as that term is defined in the Non-Disclosure Agreement, engaging in any activity prohibited by the Non-Disclosure Agreement, or from otherwise breaching the Non-Disclosure Agreement.

Plaintiffs' Motion for Permanent Injunction [docket no. 284] at 2-4. Further, in the event that the Court does not grant all the injunctive relief requested in paragraph (c) and the Court allows defendants to operate the plant at Leedey, Oklahoma, plaintiffs request that the Court condition future use of the plant upon the payment of a reasonable royalty.

II. Discussion

> For a party to obtain a permanent injunction, it must prove: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.

*SW Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009) (internal quotations and citation omitted). Plaintiffs assert that they have proven the four requirements set forth above.

A. Actual success on the merits

Because the jury found that Dr. Khalev misappropriated plaintiffs' trade secret process and that he breached his Non-Disclosure Agreement with plaintiff Iofina Resources, Inc., plaintiffs contend that they have prevailed and obtained actual success on the merits and are entitled to the permanent injunction they are requesting. The jury, however, also found that KIVA did not misappropriate plaintiffs' trade secret process and did not tortiously interfere with the Non-Disclosure Agreement. Further, the Court has denied plaintiffs' motion for entry of judgment against KIVA on plaintiffs' claims for misappropriation of trade secrets, unfair competition, and conversion. Thus, while plaintiffs have obtained some success on the merits, the Court must determine the extent of that success in order to determine whether a permanent injunction should be entered and the scope of that injunction, if one is entered.

3

While it is not entirely clear what specific conduct of Dr. Khalev the jury based its verdict in favor of plaintiffs regarding their claims for breach of the Non-Disclosure Agreement and misappropriation of trade secrets on, it is clear that the jury found that the planning, construction, and operation of the South Leedey plant did not involve the misappropriation of plaintiffs' trade secret process. The South Leedey plant is owned by KIVA and KIVA was/is involved in the planning, construction, and operation of the South Leedey plant. Since the jury found in favor of KIVA on plaintiffs' misappropriation of trade secrets claim, and since Dr. Khalev's actions in relation to the planning, construction, and operation of the South Leedey plant were not the sole basis of plaintiffs' misappropriation of trade secrets and breach of the Non-Disclosure Agreement claims against Dr. Khalev, the Court finds that plaintiffs did not have actual success on their claim that the planning, construction, and operation of the South Leedey plant involved the misappropriation of plaintiffs' trade secret process. Thus, any permanent injunction in this case should not enjoin KIVA from any conduct, should not enjoin the operation of the South Leedey plant, and should not enjoin Dr. Khalev from engaging in any conduct that would be considered the same conduct that he engaged in in relation to the planning, construction, and operation of the South Leedey plant.

Plaintiffs, however, did prevail and obtain actual success on the merits of their claims against Dr. Khalev for breach of the Non-Disclosure Agreement and misappropriation of trade secrets. The Court, therefore, finds that plaintiffs have proven the first requirement to obtain a permanent injunction.[1]

---

[1] Any permanent injunction entered in this case would necessarily be limited as set forth above.

B.  Irreparable harm

Plaintiffs assert that they will be irreparably harmed if the permanent injunction is not issued. The Tenth Circuit has held that "[w]hen the evidence shows that the defendants are engaged in, or about to be engaged in, the act or practices prohibited by a statute which provides for injunctive relief to prevent such violations, irreparable harm to the plaintiffs need not be shown." *Star Fuel Marts, LLC v. Sam's East, Inc.*, 362 F.3d 639, 651 (10th Cir. 2004) (internal quotations and citations omitted). The OUTSA provides for injunctive relief.[2] Therefore, the Court finds that a showing of irreparable harm is unnecessary in this case.

C.  Balance of harms

Having carefully reviewed the parties' submissions, having heard the arguments of counsel at the hearing, and in light of the Court's finding *supra* that any injunction in this case would be significantly more limited than the injunction requested by plaintiffs, the Court finds that the balance of harms imposed by a limited permanent injunction decidedly favors plaintiffs. Specifically, the Court finds that based upon the scope of the actual success that plaintiffs obtained in this case, any permanent injunction entered by the Court would be limited to conduct that would breach the Non-Disclosure Agreement and to conduct that would be a misappropriation of plaintiffs' trade secrets. As this conduct is improper, unlawful conduct, the Court finds there can be no harm to Dr. Khalev from enjoining him from engaging in such conduct.

---

[2]The OUTSA provides: "Actual or threatened misappropriation may be enjoined." Okla. Stat. tit. 78, § 87(A).

5

D. Public interest

Having carefully reviewed the parties' submissions, having heard the arguments of counsel at the hearing, and in light of the limited nature of any injunction that would be entered by the Court in this case, the Court finds that the permanent injunction will not adversely affect the public interest. Specifically, the Court finds that there is a public interest in upholding enforceable contracts, such as the Non-Disclosure Agreement in this case. The Court further finds that the public interest is served because the public never benefits from trade secret misappropriation.

E. Permanent injunction to be entered

As set forth above, the Court finds that plaintiffs have proven the four requirements to obtain a permanent injunction. The Court further finds that some limited permanent injunction against Dr. Khalev should be entered in this case and that said injunction should enjoin Dr. Khalev from engaging in conduct in breach of the Non-Disclosure Agreement and from engaging in conduct that would result in a misappropriation of plaintiffs' trade secrets. The Court also finds that any permanent injunction entered in this case should not enjoin KIVA from any conduct, should not enjoin the operation of the South Leedey plant, and should not enjoin Dr. Khalev from engaging in any conduct that would be considered the same conduct that he engaged in in relation to the planning, construction, and operation of the South Leedey plant.

Plaintiffs' proposed permanent injunction clearly does not comply with the Court's restrictions noted above. The Court finds that it would be more efficient to require plaintiffs to

submit a revised proposed permanent injunction in compliance with this order and to allow defendants to submit their objections, if any, to the proposed permanent injunction.[3]

III. Conclusion

Accordingly, for the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART plaintiffs' Motion for Permanent Injunction [docket no. 284]. The Court ORDERS plaintiffs to file with the Court their proposed revised permanent injunction on or before March 15, 2017. Defendants shall file their objections, if any, to the proposed revised permanent injunction on or before March 27, 2017, and plaintiffs shall file their reply, if any, on or before April 3, 2017. Additionally, the temporary restraining order entered by the Court on December 2, 2016 [docket no. 281] shall remain in force until the Court enters the permanent injunction in this case.

**IT IS SO ORDERED this 17th day of February, 2017.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE

---

[3] The Court would encourage the parties to work together to submit an agreed proposed permanent injunction.