IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. IOFINA, INC.<br>2. IOFINA RESOURCES, INC. AND<br>3. IOFINA CHEMICAL, INC.,<br><br>        Plaintiffs,<br><br>vs.<br><br>1. IGOR KHALEV, and<br>2. KIVA HOLDING, INC.,<br><br>        Defendants. | Civil Action No. CIV 14-1328-M<br>Honorable Vicki Miles-LaGrange |

### DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' RENEWED MOTION FOR JMOL

Defendants Dr. Igor Khalev and KIVA Holding, Inc. respond to Plaintiffs' Motion to Strike Defendants' Renewed Motion for JMOL or to Deem It Effective Upon "Entry of Judgment" [Dkt. No. 346]:

### INTRODUCTION

Plaintiffs' motion to strike is yet another brazen attempt to stall, obfuscate, and stymie the proceedings in this Court. The only purpose of Plaintiffs' actions is to deprive the appellate court of additional input about this Court's "take on" and/or "feel for" the evidence, witnesses, jury instructions, and case theories. Since this Court found that Iofina's post-verdict request for permanent injunctive relief was too broad, Plaintiffs have pulled out all the stops in their attempt to immediately halt these district court proceedings. Plaintiffs filed a premature Notice of Appeal, circumventing the Court's

1

order that the parties submit proposed terms of the permanent injunction to be entered [Dkt. Nos. 314 and 317]; moved to stay the proceedings pending resolution of their premature appeal [Dkt. No. 321]; moved to strike Defendants' Motion for Attorneys' Fees [Dkt. No. 315]; moved for an extension to respond to Defendants' Renewed JMOL Motion [Dkt. No. 335]; and only then filed the present motion to strike the Motion for Renewed JMOL in lieu of filing a substantive response to Defendants' Renewed Motion for JMOL.

Iofina's strong preference for the Tenth Circuit to "give [this Court] significant guidance on the material issues remaining" in this litigation [Dkt. No. 346 at p. 2]—based on as little information as Iofina cannot successfully suppress from entering the appellate record—cuts against every normative expectation in the Federal judicial system. As Supreme Court precedent teaches, the appellate process will benefit from this Court's resolution of the Renewed Motion for JMOL. Moreover, absolute finality with respect to Plaintiffs' claims is a rational predicate to Defendants' pursuit of their stayed antitrust, abuse of process, and other similar counterclaims because those claims are all based on the factual predicate that Iofina brought its trade secret misappropriation claims in bad faith and/or with an improper purpose.

This Court already entered judgment on all of the active claims (i.e., those claims that were not stayed) pending in this litigation. The only open issue related to that judgment would be the scope of the permanent injunction, but Plaintiffs' premature appeal of the permanent injunction belies their current protest that the judgment is

somehow "unentered" because of the unresolved injunction—a situation that was created by the Plaintiffs' failure to act in accordance with this Court's express order.

Although Defendants understand the Court's 2/17/2017 Judgment [Dkt. No. 314] to be a partial final judgment, Plaintiffs claim otherwise and point to the Tenth Circuit's literal approach—an approach that does not look beyond the bald statements in the underlying judgment to determine Rule 54(b) certification. Thus, while Defendants remain confident that the Court's 2/17/2017 Judgment would pass the "pragmatic finality" test regularly employed by other appellate courts, faced with the possibility of a lengthy, but ultimately rejected appeal, Defendants believe it would be more efficient for this Court to address the certification issue now. Accordingly, Defendants ask this Court to *sua sponte* revise the 2/17/2017 Judgment to include explicit findings on finality and no just reason for delay. Amending the judgment would moot the present motion, restart the briefing schedule for Defendants' Renewed Motion for JMOL, and give Plaintiffs an opportunity to file their own Renewed Motion for JMOL.

## ARGUMENT AND AUTHORITIES

I. **The Court's February 17, 2017 Judgment is pragmatically a partial final judgment, which merely lacks explicit findings on "finality" and "no just reason for delay," making its amendment straightforward.**

The Court entered Judgment [Dkt. No. 314] on February 17, 2017 disposing of all of Plaintiffs' claims against Defendants and also disposing of Dr. Khalev's counterclaim for breach of contract. *Id.* The Court previously bifurcated Defendants' other counterclaims, pending resolution of Plaintiffs' claims, as those counterclaims are

premised on the contention that Plaintiffs brought their claims—especially the claim of trade secret misappropriation—for the purpose of eliminating competition in the iodine-extraction market. [Dkt. Nos. 21, 53, and 54]. As of the date of this filing, none of the parties have moved for, nor has the Court *sua sponte,* lifted that stay on Defendants' pending counterclaims.

Following the February 17th entry of judgment, the only outstanding issue on Plaintiffs' case was the specific terms of the permanent injunction to be entered against Dr. Khalev.

> Fed R. Civ. P. 54(b) states:
>
> When an action presents more than one claim for relief … the court may direct entry of final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Thus, a judgment that disposes of less than all of the outstanding claims in a case can constitute a [partial] final judgment under Rule 54(b) if the Court determines that: 1) the judgment is a final order; and 2) there is no just reason to delay review of the final order until it has conclusively ruled on all claims presented by the parties to the case. *National Credit Union Admin. Bd. v. Morgan Stanley & Co., Inc.*, 2015 WL 4463645, at *2 (D. Kan. July 21, 2015) (quoting *Oklahoma Turnpike Auth. v. Bruner*, 259 F.3d 1236, 1242 (10th Cir. 2001)). In making this determination, the Court should weigh Rule 54(b)'s policy of "preventing piecemeal appeals against the inequities that could result from delaying an appeal." *Id.* (citing *Stockman's Water Co. v. Vaca Partners, L.P.*, 425 F.3d 1263, 1265 (10th Cir. 2005) (internal citations omitted)).

Plaintiffs take issue that the Court's 2/17/2017 Judgment does not explicitly make findings on "finality" and "no just reason for delay." While the Tenth Circuit has recognized the existence of the "pragmatic finality" doctrine, unlike many of its sister courts of appeal, it has been "leery to apply the doctrine." *New Mexico v. Trujillo*, 813 F.3d 1308, 1317 (10th Cir. 2016). Instead, the Tenth Circuit requires that district courts make explicit findings necessary for Rule 54(b) certification. *Id.* ("when district courts fail to make express determinations, we do not consider the parties' arguments about finality and no just reason for delay"). Thus, rather than rely on application of the "pragmatic finality" doctrine, which the Tenth Circuit rarely applies, Defendants have arrived at the conclusion it would be far more prudent to ask this Court to amend the judgment to include explicit findings on finality and no just cause.[1] As there is no set procedure for certifying a judgment pursuant to Fed. R. Civ. P. 54(b), the district court may consider the question *sua sponte*. 10 Wright, Miller & Kane, *Fed. Prac. & Proc. Civ.* § 2660 (3d. ed. 2008); *McNellis v. Raymond*, 287 F.Supp. 232, 244-45 (N.D.N.Y 1968); and *Arimizu v. Financial Sec. Ins. Co., Inc.*, 679 P.2d 627, 634 (Haw. App. 1984). *See also Westar Energy, Inc. v. Lake,* 502 F.Supp.2d 1191, 1194 (D. Kan. 2007) ("The court may, *sua sponte* or on motion, correct clear errors of fact or law in an interlocutory order").

---

[1] The position advocated here is a slight departure from the position taken in Defendants' Response to Plaintiffs' Motion to Strike Defendants' Motion for Attorneys' Fees [Dkt. No. 345]. However, an award of attorneys' fees is not entirely contingent on an entry of final judgment, and since filing that Response, Defendants have come to appreciate, especially in light of the 4/6/17 Order [Ex. 1] from the Tenth Circuit that the appellate court is unlikely to rule on even the jurisdictional issue for nearly a year and a half.

### a. The Court's 2/17/17 Judgment is final because the claims disposed of in that Judgment are severable and do not overlap with Defendants' bifurcated and pending counterclaims.

In determining whether the judgment is "final," the Court should consider whether (1) the claims disposed of in the judgment are separable from the others remaining to be adjudicated, and (2) the nature of the claims already adjudicated are "such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Trujillo*, 813 F.3d at 1316.

In the Tenth Circuit, an order is final for purposes of Fed. R. Civ. P. 54(b) if it "comprises all factually or legally connected elements of a case." *Jordan v. Pugh*, 425 F.3d 820, 827 (10th Cir. 2005). There is no bright-line rule to distinguish multiple claims, which may be appealed separately, from multiple legal grounds in a single claim, which may not be appealed separately. *Id.* The distinction is based largely on "practical concerns," specifically if a "subsequent appeal of the claims before the district court will require the court of appeals to revisit the same issue decided in the first appeal." *Id.* at 827. In determining if separate appeals would be redundant, the courts consider whether the purportedly separate claims "turn on the same factual questions, whether they involve common legal issues, and whether separate recovery is possible." *Id.*

The outstanding causes of action not contained in the February 17th Judgment [Dkt. No. 314] are Defendants' bifurcated and stayed counterclaims. There is no overlap between the already-adjudicated claims and the stayed counterclaims. Rather, the bifurcated counterclaims are dependent upon final findings in favor of Defendants on

Plaintiffs' already-adjudicated trade secret misappropriation claims, in the sense that the underlying bases for all of those counterclaims relied on the resolution of Plaintiffs' claims against Defendants. Plaintiffs will surely argue that this dependency means the bifurcated claims overlap with the already-adjudicated claims. However, other district courts have addressed the situation when bifurcated claims that rely on the original causes of action are separable, especially in the context of antitrust claims.

In *Medrad, Inc. v. Tyco Healthcare Group, LP*, 2005 WL 3466038 (M.D. Pa. Dec. 19, 2005), a patent infringement case, the court determined that, since all issues as to infringement and enforceability of the patents at issue had been settled, there was no real dispute that the order was final as to the patent claims, even considering the existence of a bifurcated antitrust counterclaim. *Id.* at *1. The court specifically considered the factual relatedness of the patent and antitrust claims and the risk of an appellate court having to decide the same issues in subsequent appeal and found that the claims were "factually separable." *Id.* at *2. The court made this finding even though the antitrust counterclaim was based, in part, on allegations of inequitable conduct during prosecution of one of the patents at issue. *Id.* The court found that, because the factual details of the plaintiff's prosecution were not considered in adjudicating the plaintiff's causes of action for infringement, the claims were factually separable. *Id.* Like *Medrad*, while Defendants' counterclaims are dependent upon resolution of Plaintiffs' causes of action, they are not based on the same underlying factual allegations.

All of Defendants' bifurcated counterclaims sound in allegations that Plaintiffs

7

improperly brought their causes of action against Defendants in order to eliminate competition in the iodine-extraction industry. Clearly, the success and even the decision to pursue these counterclaims is dependent on the final factual determination that Plaintiffs' claims lack merit. The Court already reached a similar conclusion when it bifurcated and stayed the Defendants' remaining counterclaims in order to "streamline" the proceedings. [Dkt. No. 54]. Therefore, the Judgment as to all of Plaintiffs' causes of action in the case is sufficiently final.

Plaintiffs' reliance on *Citizens Accord, Inc. v. Town of Rochester, N.Y.*, 235 F.3d 126, 128 (2d Cir. 2000) to argue that a judgment that disposes of causes of action in the complaint, "while leaving a counterclaim pending, is not a final judgment" is misplaced. [Dkt. No. 323, p. 3]. First, *Citizens Accord* dealt with a dismissal of the complaint, not a final adjudication on the merits of the plaintiff's claims through trial. *Id.* at 128-29. Second, the counterclaims in *Citizens Accord* were actively pending, not bifurcated and stayed. *Id.* Here, all but one of Defendants' Counterclaims were bifurcated and discovery stayed pending resolution of Plaintiffs' claims and Defendants' breach of contract counterclaim. [Dkt. No. 54]. The Parties have not moved to lift the stay on those bifurcated counterclaims. Further, as all of the bifurcated counterclaims depend on the ultimate failure of Plaintiffs' claims, they are dependent upon the resolution of, but do not overlap with, Plaintiffs' claims. Accordingly, amending the Judgment to expressly state that the Court's 2/17/2017 Judgment is a "final" judgment pursuant to Fed. R. Civ. P. 54(b) would be appropriate.

**b. The Court should also make the express determination that there is no just reason for delay because the equities and judicial administrative interests weigh against delaying resolving the issues currently before the Court, especially those relating to Plaintiffs' already-adjudicated claims, until after the Tenth Circuit's decision on appeal.**

There is also no just reason to delay entering judgment on the adjudicated claims. In determining whether there is just reason for delay, the Court should act as a "dispatcher," weighing Fed. R. Civ. P. 54(b)'s "policy of preventing piecemeal appeals against the inequities that could result from delaying an appeal." *Stockman's Water Co., LLC v. Vaca Partners, L.P.*, 425 F.3d 1263, 1265 (10th Cir. 2005) (citing *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 8 (1980)). The district court must take into account "judicial administrative interests as well as the equities involved." *Mayberry v. Johnson*, 2009 WL 211939, at *2 (D. Kan. Jan. 23, 2009) (quoting *Curtiss-Wright*, 446 U.S. at 8). There is no dispute that all outstanding causes of action asserted by Plaintiffs in this case have been resolved. The only remaining issue is the scope and terms of the permanent injunction to be entered against Dr. Khalev. Indeed, Plaintiffs have surely conceded the point that the Judgment was sufficiently final as to its causes of action— otherwise they would not have filed their Notice of Appeal. Further, the trial concluded with a jury verdict <u>on all of Plaintiffs' claims</u> highlighting that there is no just reason for further delay. *See, e.g. U.S. ex rel. Rigsby v. State Farm Fire and Cas. Co.*, 2014 WL 691500, at *23 (S.D. Miss. Feb. 21, 2014) (because pending counterclaim was "dependent upon facts and legal theories wholly distinct from those upon which [the plaintiff's] claims relied," there was no reason to delay final judgment).

If the Court delays in certifying its 2/17/17 Judgment as final, it is likely to be at least a year and half before the Tenth Circuit even announces its decision whether it has jurisdiction over the appeal. By that time, the issues related to Plaintiffs' already-adjudicated claims that are currently before the Court would become unnecessarily, undesirably stale. So, while it is apparent from the record and posture of this case that an express certification would not be factually necessary to convey the finality of Plaintiffs' claims, Defendants now believe the safest, most efficient course of action would be for the Court to amend the judgment to make explicit the Court's positions as to the finality and "no just reason for delay" requirements of Fed. R. Civ. P. 54(b). Thus, the Court could amend the Judgment to make explicit its position on the Rule 54(b) issues. *See Medrad, Inc. v. Tyco Healthcare Group, LP*, 2005 WL 3466038, at *1-2 (M.D. Pa. Dec. 19, 2005) (amending a previously entered "final judgment" and expressly finding no just reason for delay and entering partial final judgment where adjudicated patent claims and bifurcated and stayed antitrust counterclaims were "factually separable").

Yet another reason the Court should revise its judgment to include the Rule 54(b) requirements is because it will be Defendants, not Plaintiffs, who are prejudiced by the delay in entry of judgment. Delay in the prosecution of Defendants' Renewed Motion for JMOL will delay justice for Dr. Khalev and deprive the Tenth Circuit of this Court's "feel" for the overall case, as well as its "first-hand knowledge of witnesses, testimony and issues." *Neely v. Martin K. Eby Constr. Co.*, 386 U.S. 317, 325, 87 S.Ct. 1072, 18 L.Ed.2d 75 (1967). As to the former, the Tenth Circuit appeal is developing slowly and

resolution of the jurisdictional issue has been unfortunately, and frustratingly, postponed and referred to the merits panel. Consequently, this Court's striking Defendants' Renewed JMOL Motion and/or otherwise staying the proceedings practically means that at least a year delay will occur before those issues are heard by this Court. In the meanwhile, memories will fade and decisions will be made by the Tenth Circuit without any feel from the district court. All of this is not a fluke; rather, it is a deliberate attempt by Plaintiffs to prejudice the Defendants and usurp the normal course and process of litigation.

While most would view those potential events as travesties of justice, it is plain that Iofina's pursuit of these such travesties motivated each of their filings in this Court and the Tenth Circuit—Plaintiffs do not want this Court to enter injunctive relief that is more limited in scope than what they requested. All of the relevant factors—namely, equity and efficient judicial administration—weigh in favor of the Court amending the 2/17/17 Judgment to expressly state and provide the reasons why there is no just reason for delay entering partial final judgment.

II. **The cases cited by Plaintiffs to support the idea that Defendants' JMOL Motion should be held in abeyance for a later entry of Judgment on all claims are inapplicable.**

Plaintiffs next argue that Defendants' JMOL Motion should just be held until the final judgment sometime off in the future. The cases Plaintiffs cite in support of their suggestion that Defendants' JMOL motion should be held in abeyance until a later "entry of judgment," are not the least bit analogous to the present posture of our case. In *Walls v.*

*MiraCorp, Inc.*, 2011 WL 1636930, at *2 (D. Kan. 2011), the Court did hold that the Renewed Motion for Judgment as a Matter of Law was premature, but the judgment had not yet been entered, *at all*. [Ex. 2, Docket Sheet from *Walls v. Miracorp, Inc.* D. Kan. Case No. 2:09-cv-02112-JAR]. Instead, a JMOL motion was filed less than one month after the reading of the verdict, but before a hearing on punitive damages, notwithstanding the court's Order specifically deferring entry of judgment until after that post-verdict hearing. [Ex. 2, at Dkt. Nos. 155, 156 and 158-160]. Similarly, in *Aguinaga v. John Morrell & Co.*, 1989 WL 47089 (D. Kan. March 21, 1989), the court determined that a Motion for JNOV was premature because the court had yet to enter <u>any judgment</u>. *Id.* at *1. There, the jury had returned a verdict on the issue of liability, but the damages issues had yet to be tried. *Id.*

Perhaps these cases would be applicable if Defendants had filed their JMOL Motion after the reading of the verdict but before the entry of Judgment. That is not the case, however. The verdict was read on November 28, 2016. [Dkt. No. 274]. Plaintiffs subsequently moved for an Entry of Judgment Against KIVA [Dkt. No. 279] and to permanently enjoin both Dr. Khalev and KIVA [Dkt. No. 284]. The Court entered Judgment [Dkt. No. 314] after it ruled on both of those motions [Dkt. Nos. 312 and 313]. Defendants did not renew their Motion for JMOL until 28 days after the Entry of Judgment, pursuant to Fed. R. Civ. P. 54(b). [Dkt. Nos. 325 and 328]. So, neither case cited by Plaintiffs to support their suggestion to hold Defendants' motion until later entry of judgment on all claims applies to the present circumstances.

Despite the inapplicability of these cases, if the Court adopts the approach proposed by Defendants here and amends the Judgment, the effect of holding Defendants' JMOL Motion in abeyance until a later entry of judgment will mean that the motion is held in abeyance for a matter of days, maybe weeks. So, as long as the Court undertakes such a course, Defendants do not object to holding the JMOL Motion abeyance until then.

## **CONCLUSION**

The Court's Judgment [Dkt. No. 314] resolves all of Plaintiffs' claims against Defendants as well as Dr. Khalev's counterclaim for breach of contract against Plaintiffs. The only overlapping issue that remains is the specific scope of the permanent injunction to be entered against Dr. Khalev. Tellingly, the pending determination as to the scope of the permanent injunction did not stop Iofina from filing a Notice of Appeal focused on such injunctive relief. As for Defendants' bifurcated and stayed counterclaims, they are all dependent on the final resolution of Plaintiffs' claims. The Court's entry of Judgment was a clear pronouncement that the time for resolving the Renewed Motion for JMOL is now. Even if the Judgment did not contain the express requirements of Fed. R. Civ. P. 54(b), the Court's pronouncement was clear that it was making a final judgment as to the claims already adjudicated.

In order to clear up any confusion about the Court's intent and to prevent any future delays, Defendants ask this Court to *sua sponte* amend its 2/17/17 Judgment to expressly certify it as a partial final judgment in accord with the requirements of Fed. R.

Civ. P. 54(b). In fact, revising the Judgment to include specific findings on "finality" and "no just reason for delay" would render Plaintiffs' Motion to Strike Defendants' JMOL Motion moot. As such, the Court should amend the 2/17/17 Judgment, deem Defendants' JMOL Motion filed upon its entry of that revised Judgment, and deem Plaintiffs' present motion moot.

DATED: April 18, 2017              Respectfully submitted,

*/s/ Evan W. Talley*
Douglas J. Sorocco, OBA No. 17347
Evan W. Talley, OBA NO. 22923
**DUNLAP CODDING PC**
609 West Sheridan Avenue
Oklahoma City, OK 73102
Telephone:   (405) 607-8600
Facsimile:    (405) 607-8686
E-mail: etalley@dunlapcodding.com

-and-

Jordan A. Sigale (admitted *pro hac vice*)
Illinois ARDC No. 6210047
**DUNLAP CODDING PC**
225 West Washington St., Ste. 2200
Chicago, IL 60606
(Telephone):  (312) 651-6744
E-mail: jsigale@dunlapcodding.com

**ATTORNEYS FOR DEFENDANTS
IGOR KHALEV AND
KIVA HOLDING, INC.**

**CERTIFICATE OF SERVICE**

I certify that on April 18, 2017, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Randall J. Snapp
Tynia Watson
Allen Hutson
Drew Palmer
Andrew Henry

*/s/ Evan W. Talley*
Evan W. Talley